Gkeen, J.
delivered the opinion of the court.
This bill is brought to recover a negro slave Frances and her children. It appears that on the first day of October, 1812, Edward Warren, of Chatham county, North Carolina, made a deed of that date whereby he conveyed to his grand daughter, (then an infant of one year old,) Rebecca Ann Warren Richardson, daughter of William F. Richardson and his wife Elizabeth, two negroes, Frances and James, to her and her heirs forever — on condition that his daughter Elizabeth Richardson should enjoy the service of said negroes during her life, and' at her death, the negroes were to go to the said Rebecca, and such other children as said Elizabeth might bear.
*547 Rebecca Ann, to whom the deed was made, was born 9th of May, 1811, and her mother, Elizabeth Richardson, afterwards bore several other children, who are complainants in the bill — the youngest of whom was born 24th October, 1824, and said Elizabeth died 1st March, 1832.
William F. Richardson, the father of Rebecca Ann, took possession of said negroes; and in 1819, moved to Tennessee, bringing the negroes with him, and he always supposed, until 1827, that a good title passed by said deed, according to its terms, and his possession was in accordance with such opinion.
In 1827, said Richardson being told said deed was void because it had not been registered in Tennessee; and, therefore, believing the negroes were his own property, on the 12th of December, 1827, sold the woman Frances to the defendant, who has had possession of her ever since.
This bill was filed lGth of May, 1846. At May session, 1815, of Chatham court, the execution of the deed was duly proved by the oath of Meredith McKinzie, and ordered to be registered.
The Register of Chatham county, certifies a true copy as registered in the Register’s office in the county of Chatham, and State aforesaid, in Book F. pages 332 and 333 ; said certificate is dated 16th April, 1846.
By the act of 1806, of North Carolina, deeds of gift of slaves are required to be proved and registered in twelve months from the date, or they are void. But it is insisted for the complainants, that the legislature of North Carolina, has, from time to time, passed laws extending the time for registering deeds heretofore made; and the courts of North Carolina, hold, that a deed registered in pursuance of such laws, is valid to all *548 intents and purposes, except as against a person deriving title from the same bargainor previous to such registration — and that said courts also held, that if a deed shall have been registered at a time when there was no law in force authorising such registration — yet a subsequent law extending the time for registration will validate such, deed, so registered.
These propositions are fully supported by the cases referred to, and we think those cases were properly decided. But the latest act extending the time for such deeds to be registered, to which we have been referred, was passed in 1881. And we have no evidence, from the certificate of registration, to the copy of this deed that it was registered earlier than the date of the certificate, which is the 16th of April, 1846.
It is suggested in argument, that these laws extending the time for registering such instruments have, doubtless, been continued up to the present time. This supposition may be true, but our judgment, as to what the law of North Carolina is, must not rest upon a supposition. It was the duty of the complainants, if there be such laws, to have produced them.
It is insisted, that as the register is a sworn officer, it must be presumed, that he did his duty — and that he would not register a deed, when the law did not authorise him to do so: that therefore, prima facie, the registration was proper: and that it devolves on the party contesting the validity of the deed to show that the officer had acted illegally. We cannot assent to this proposition. The register is a mere ministerial officer; and it must be shown by the party claiming a right, by virtue of his acts, that those acts were in comformity to law. We think, therefore, that there is no evidence *549 that this deed was registered in conformity to the laws of North Carolina, so as to confer on the complainants a title to the slaves in controversy. Second: But the counsel for the complainants insists, that whether this deed be a valid conveyance or ' not, yet it may serve to show the character of W. F. Richardson’s possession that that possession was adverse to Warren, the bargainor, and being in conformity to the provisions of the deed, it was held for the complainants, and, thereby vested in them a title, according to the terms of the deed, by the statute of limitations.
This proposition is untenable. If the possession of Wm. F. Richardson, was held in conformity to the title conveyed in the deed, it might thereby vest the absolute title in Rebecca Ann, the bargainee, in the deed according to the case of McKissick vs. McKissick, (Meigs’ Rep. 427,) but the trusts of the deed would not thereby be established. For if this were so, a man might, by parol, make a donation of personal property for life, stipulating certain trusts and limiting it in remainder to others: and the trusts and remainder, though absolutely void at the time, would become effectual, if the property were held three years in possession, with the belief of the possessor, that they were valid. The statute of limitations can confer a title on no one but the person in adverse possession. That the possession of a father, has been held to confer a title upon his infant child, does not vary this principle: for being the natural guardian of the child his possession is held to be the child’s possession, and, therefore, the child acquires the title. But it cannot be said that the possession of a party actually holding a slave, is the possession of another person in remainder, in whom no estate in remainder has *550 been created. That the party shall say, “I hold this negro for myself, during the life of my mother, and then for myself and my brothers and sisters,” will, certainly, confer on the brothers and sisters no right — because they were not in possession. If Wm. F. Richardson held this slave three years in Tennessee, adversely to Warren, and for his daughter Rebecca, that adverse holding would vest in Rebecca an absolute title to the slave. But, in that case, her action would be barred by the adverse possession of the present defendant. Rebecca Ann, became of age the 9th of May, 1832; the defendant purchased the slave the 12th of December, 1827, and this suit was not brought until the 16th of May, 1846.
Third: But if this deed were well registered, and at the time vested a good title in the parties, still the statute of limitations would bar a recovery in this suit. So soon as a right of action accrues, the statute of limitations commences running against an infant,' or feme covert, and by the saving of the statute, they are allowed to sue in three years, after the disability is removed. In this case, the legal title was in Rebecca Ann, and her right of action accrued in 1827, when her father sold the negro to the defendant. Although an infant, she might have sued; and the statute commenced ranning against her. Although her mother died before she became of age and her separate right of action then might have been merged in the right of all the brothers and sisters, in remainder, yet this disability could not be added to the disability of her infancy, previously existing, but the statute having begun to run, formed the bar — she not having sued in three years after her full age. Williams vs. Otey, 8 Hum. R.; Shute vs. Wade, 5 Yer. R.
Upon the whole case, therefore, we affirm the decree.